IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

In re:

Charles E. Witherington, Jr.,   Case No.: 13-03775

　　Debtor.

## ORDER GRANTING DEBTOR'S MOTION FOR INSTRUCTIONS AND DECLARING THAT DEBTOR'S AUTOMOTIVE LIFTS ARE FIXTURES OF DEBTOR'S REAL PROPERTY

John R. Cox, Attorney for Debtor, Spanish Fort, AL
　Terrie S. Owens, Attorney for Trustee, Lynn Harwell Andrews, Mobile, AL

This matter is before the Court on the debtor's Motion for Instructions as to the status of automotive lifts located on the debtor's property. This Court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334 and the Order of Reference of the District Court. This matter is a core proceeding pursuant to 28 U.S.C. § 157, and the Court has the authority to enter a final order. For the reasons stated below, the Court finds that the automotive lifts in question are fixtures and cannot be removed by the Trustee.

## FACTS

The debtor filed a voluntary Chapter 7 petition on October 15, 2013. On January 31, 2014, the Trustee filed a Motion to Inspect Property and a Motion for Turnover of nonexempt personal property, which included the property at issue, two automotive lifts (or "mechanics' lifts"). On February 18, 2014, this Court conditionally granted the Trustee's motion with respect to lifts "that are not affixed to the realty and can be removed without damage to the realty" and an order was entered on February 20, 2014. Subsequently, the debtor filed a Motion for Instructions asking this Court to find the lifts to be affixed and part of the real property.

The debtor owns two automotive lifts which are located his property. The lifts are installed in a steel building that serves as the debtor's garage. They have been in place for the past ten years. They are bolted into the concrete and wired into the electrical system. Each lift is attached to the concrete of the garage by eight bolts, four at each leg.

The parties focused on different aspects of the case. The Trustee emphasized the movability of the lifts. David Smith, an expert in the installation and removal of machinery, testified for the Trustee. According to him, the lifts may be removed without material damage to the real property. The debtor focused on the use of the lifts. The debtor gave conflicting testimony regarding whether he has used or does use the lifts commercially. On the one hand, he said he only repairs vehicles recreationally for his friends and family. On the other hand, he testified that he uses the lifts to repair lawn mowers that he uses in his business.

The parties also presented conflicting evidence regarding the value of the lifts. The debtor estimated the lifts to be worth $250 on Schedule B, where he listed them as an asset. The Trustee estimates their value at $8,000-10,000.

## LAW

State law governs the determination of a debtor's property interests in a bankruptcy proceeding. *In re Thomas*, 883 F.2d 991, 995 (11th Cir. 1989). In this case, Alabama law governs whether the debtor's automotive lifts are personal property or fixtures of the real estate. The Trustee bears the burden of proof.[1] FED. R. BANKR. P. 4003(c); *In re White*, 455 B.R. 241, 243 (Bankr. M.D. Fla. 2010). Even if the burden were on the debtor, the result would be the same.

---

[1] Although, this is the debtor's Motion for Instructions, the motion is really to determine whether property is exempt real estate or not, which is an exemption issue on which the Trustee normally bears the initial burden of proof.

In Alabama, fixtures are goods that become "so related to particular real estate that an interest in them arises under real estate law." Ala. Code § 7-2A-309(1)(a) (1975). Whether a chattel has become a fixture depends on the factual circumstances. *Milford v. Tennessee River Pulp & Paper Co.*, 355 So. 2d 687, 690 (Ala. 1978). Alabama courts use a set of factors to determine whether property is a fixture. The *Langston* test sets forth the criteria used. The three part test includes "(1) Actual annexation to the realty or to something appurtenant thereto; (2) Appropriateness to the use or purposes of that part of the realty with which it is connected; (3) The intention of the party making the annexation of making permanent attachment to the freehold." *Milford*, 355 So. 2d at 690, citing *Langston v. State*, 11 So. 334 (Ala. 1892). The installing party's intent may be inferred "(a) From the nature of the articles annexed; (b) The relation of the party making the annexation; (c) The structure and mode of annexation; (d) The purposes and uses for which the annexation has been made." *Id.* Intent may be express or implied, and when a party has voluntarily erected a structure, intent is presumed. *Milford*, 355 So. 2d at 690.

The Trustee asserts that even if the automotive lifts are deemed fixtures, they fall within the trade fixture exception. A trade fixture is "removable personal property that a tenant attaches to leased land for business purposes." *Black's Law Dictionary* 669 (8th ed. 2004). The trade fixture exception is almost as old as the rule of fixtures itself, dating back to English common law and recognized by the U. S. Supreme Court as early as 1829. *Van Ness v. Pacard*, 27 U.S. 137, 143 (1829). The rationale behind the exception is a public policy "in favor of trade and to encourage industry" as the tenant who has annexed a trade fixture has done so not as an improvement to the land but to better use and enjoy the object itself. *Alabama Mach. & Supply*

*Co. v. Roquemore*, 87 So. 435, 437-38 (Ala. 1921). As its purpose is to serve the convenience of his trade, it is removable. *Id.* at 438.

Trade fixtures may be removed even if the lease disallows the removal of fixtures. *LaFarge Bldg. Materials, Inc. v. Stribling*, 880 So. 2d 415, 419 (Ala. 2003). The test is whether the tenant installed the object for trade or business purposes. *Sycamore Mgmt. Grp., LLC v. Coosa Cable Co., Inc.*, 42 So. 3d 90, 94 (Ala. 2010). When such intent is found, no matter how firmly affixed the object is to the realty, it is treated as personal property and always removable. *Id.*

The trade fixture exception does not apply to the debtor's automotive lifts. It applies only within a landlord-tenant relationship and does not exist outside of that relationship. *Sycamore Mgmt. Grp.*, 42 So. 3d at 94-95. In *Sycamore*, the plaintiff was a cable company that installed cable boxes and wiring at a subdivision owned by the defendant, a property management company. The defendant later gave a different cable company exclusive rights to provide cable to its residents. The plaintiff sued to prevent the other cable company from using its cable boxes and wiring, claiming they were personal property as they were removable trade fixtures. The court held the plaintiff's cable equipment were fixtures, but they were not trade fixtures because the plaintiff did not have a landlord-tenant relationship with the defendant or with the defendant's predecessor in interest. *Id.*

In this case, the debtor and the Trustee do not share a landlord-tenant relationship. Therefore, the trade fixture exception does not apply. Rather, the *Langston* test of actual annexation, appropriateness to the use or purpose of the realty, and intent of the party to make the annexation permanent controls. *LaFarge Bldg. Materials*, 880 So. 2d at 420. The debtor's automotive lifts meet those criteria.

Beginning with the last criterion, intent is presumed when a structure is voluntarily erected and attached by a party. *Milford*, 355 So. 2d at 690. When an object has been attached and in place for a long duration, a strong inference of intent to make the attachment permanent arises. *Id.* In this case, the debtor voluntarily installed the automotive lifts in his garage. They have been in place for ten years. As the debtor voluntarily attached the lifts and has kept them in place for ten years, he has demonstrated the requisite intent to make the lifts a permanent affixation of the realty.

As to the second criterion, the lifts are appropriate to the use and purpose of the realty to which they are attached. The debtor's automotive lifts are affixed to the concrete of his garage, where one would expect a car lift to be affixed. The test is not whether the objects are necessary but whether they are appropriate to the realty where they are annexed. The Supreme Court of Alabama has found coal-washing equipment to be appropriate when the equipment was cemented to the realty in a coal-producing area. *Milford*, 355 So. 2d at 690. Other courts have found luxuries like speaker systems and built-in china cabinets to be appropriate. *See In re Harless*, 502 B.R. 581 (Bankr. N.D. Ala. 2013); *Ex parte Brown*, 485 So. 2d 762 (Ala. Civ. App. 1986). Like automotive lifts, such luxuries may not be necessary to one's use of the realty and may not be found in most homes but are appropriate fixtures of the real property.

The first criterion, actual annexation, was the most heavily disputed at trial. For actual annexation, it is not necessary that the mode of attachment to the freehold be made "absolutely permanent." *Langston v. State*, 11 So. 334, 336 (Ala. 1892). Nor does an object need to be so affixed to the realty that its removal would cause serious damage. *In re Albright*, 214 B.R. 408 (Bankr. N.D. Ala. 1997). In *Albright*, a heating pump that the debtors testified could be removed without damaging the real estate was still held to be "sufficiently, even if slightly attached to the

realty to satisfy the element of actual annexation." *Id.* at 410. Even a slight physical attachment shows an object is prima facie part of the realty for the purpose of fixture analysis. *Silverman v. Mazer Lumber & Supply Co.*, 42 So. 2d 452, 453 (Ala. 1949).

If an object cannot be removed without injury to the property, this alone is sufficient to create a fixture, but it is not necessary. In *Farmers & Merchants Bank*, the Alabama Court of Appeals stated that "any chattel permanently annexed to the freehold, and which cannot be severed without material injury to the premises, becomes part of the realty, irrespective of the intention with which it was attached." *Farmers & Merchants Bank v. Sawyer*, 163 So. 657, 658 (Ala. Ct. App. 1935). In plain terms, when the removal would cause damage, one need not prove the intent element of the *Langston* test. Rather, an object so affixed is a permanent fixture, removable only if it falls within the trade fixture exception. *Sycamore Mgmt. Grp.*, 42 So. 3d at 94. However, the inverse is not true. An object's removal need not cause physical damage for the object to be actually annexed to the realty and a fixture.

The debtor's lifts are actually annexed to the realty. They are bolted into the concrete floor of the building with a total of sixteen bolts. *See In re United Chevrolet, Inc.*, 21 B.R. 934, 938 (Bankr. D. Mass. 1982) (finding hydraulic car lifts to be annexed to the realty and fixtures of the real property). They are wired into the electrical system, like the speaker system in *Harless*. As installed, they easily meet the element of "slight" attachment for the purpose of actual annexation. The Trustee's expert witness testified that the lifts could be removed without damage to the realty. However, in light of the other factors, this does not change the Court's analysis.

The Court finds the debtor intended the lifts to be permanent, the lifts are appropriate for the use and purpose of the realty, and the lifts are actually annexed to the real property. Because

the lifts satisfy the *Langston* test, they are fixtures. As there is no landlord-tenant relationship between the debtor and the Trustee, the lifts do not fall within the trade fixture exception. Therefore, it is ORDERED that the Trustee may not remove the automotive lifts as they are fixtures of the real property.

Dated: May 23, 2014

MARGARET A. MAHONEY
U.S. BANKRUPTCY JUDGE